96

Juan Eugenio Serrallés Sánchez, demandante y apelante, v. Rafael Sancho Bonet, Tesorero de Puerto Rico, demandado y apelado.

Félix Juan Serrallés Sánchez, demandante y apelante, v. Rafael Sancho Bonet, Tesorero de Puerto Rico, demandado y apelado.

La Sociedad Civil y Agrícola Indústrial "Sucesión J. Serrallés", demandante y apelante, v. Rafael Sancho Bonet, Tesorero de Puerto Rico, demandado y apelado.

Núms. 7809, 7810 y 7811.—*Sometidos:* Enero 31, 1939.
*Resueltos:* Junio 13, 1939.

*V. Zayas Pizarro,* abogado de los apelantes; *Hon. Procurador General B. Fernández García y M. Rodríguez Ramos, Procurador General Auxiliar,* abogados del apelado.

El Juez Presidente Señor Del Toro emitió la opinión del tribunal.

Juan Eugenio Serrallés, Félix Juan Serrallés y la Sociedad Civil-Agrícola Sucesión J. Serrallés entablaron estos pleitos, que envuelven las mismas cuestiones legales, contra el Tesorero de Puerto Rico R. Sancho Bonet, en reclamación de $1,050 el primero, $1,218.01 el segundo y $2,508.75 la tercera, pagados bajo protesta, con intereses y costas.

Alegaron en sus demandas que compraron tres aeropla-nos, respectivamente, a "Fairchild Airplane Co.", de Hagers-town, Maryland, en febrero, 1937, uno, a "Stimson Aircraft Co.", de Wayne, Michigan, en noviembre de 1936, otro, y a "Beechcraft Aircraft Co.", de Wichita, Kansas, también en noviembre de 1936, otro, habiéndolos inscrito en el Departamento Federal de Washington, D. C., como "licensed aircrafts" para uso particular de los compradores en Puerto Rico y entre esta Isla y Estados Unidos y otras naciones, llegando aquí en febrero de 1937 el primero y en noviembre de 1936 los dos últimos.

Alegaron además que por el Tesorero demandado se les requirió para el pago de un arbitrio sobre los dichos aeroplanos como comprendido en el inciso 8 de la sección 16 de la Ley de Rentas Internas de 1931 (Ley núm. 83 de 1931, pág. 505), según fué enmendada por la Ley núm. 108 de mayo 15, 1936 (Leyes de 1936 (1) pág. 567), que con recargos, intereses y multas, ascendía a las sumas indicadas que bajo protesta pagaron y que reclaman de acuerdo con la Ley núm. 8 de abril 19, 1927 (Leyes de 1927, pág. 123), y sus enmiendas, por los siguientes motivos:

1. Porque dichos aeroplanos fueron adquiridos en Estados Unidos e inscritos bajo licencia federal para ser usados no solamente en Puerto Rico si que en viajes a Estados Unidos y a otras naciones, no estando por tanto sujetos a ley alguna de arbitrios de Puerto Rico;

2. Porque la ley de Rentas Internas de Puerto Rico no impone en verdad arbitrio alguno a los aeroplanos;

3. Porque las sumas impuestas como intereses son ilegales por exceder del tipo autorizado por el estatuto que regula la materia;

4. Porque los demandantes no se negaron a suministrar las facturas ni dejaron de pagar el impuesto dentro del tiempo reglamentario, habiéndose limitado a adoptar una actitud defensiva;

5. Porque las valoraciones de los aeroplanos hechas por el Tesorero son inexactas; y

6. Porque el recargo del cinco por ciento sobre el supuesto valor de los aeroplanos, más los intereses al tipo ilegal del doce por ciento anual, más las multas administrativas de veinte y cinco dólares por la supuesta negativa de los demandantes a proporcionar la factura, más las multas administrativas de veinte y cinco dólares por no haberse pagado en tiempo el arbitrio, constituyen cuatro impuestos adicionales' o penalidades sobre un mismo objeto y por un mismo acto, no permitidos por la ley, y si la ley los autorizara sería anticonstitucional por carecer del requisito de uniformidad, por ser una cuádruple contribución, por constituir una cuádruple penalidad equivalente a una confiscación sin el debido proceso de ley y porque el Tesorero carece de facultad para imponer multas, facultad que tampoco puede serle delegada por la Legislatura.

En sus contestaciones el Tesorero aceptó algunos hechos y negó otros. Sostuvo, en resumen, la validez de su actuación.

Fueron los pleitos a juicio. Los demandantes presentaron evidencia documental y testifical. La corte falló en contra suya y apelaron para ante este tribunal señalando en un alegato, común a los tres recursos, nueve errores como cometidos por la corte de distrito, 1, al resolver que los aeroplanos están comprendidos en el inciso 8, sección 16, de la Ley de Rentas; 2, al decidir que no es aplicable el caso de *McBoyle* v. *United States,* 283 U. S. 25; 3, al resolver que el arbitrio impuesto no interfiere con la Ley Nacional de Comercio Aéreo de 1926; 4, al concluir que no tiene aplicación el caso de *Station WBT* v. *Poulnot,* 46 F. (2d) 671; 5, al no declarar que la valoración del Tesorero era inexacta; 6, al resolver que los intereses se cobraron de acuerdo con la ley; 7, al no resolver que los demandantes no dejaron de suministrar la documentación necesaria, ni tampoco de pagar el impuesto dentro del tiempo reglamentario; 8, al no decidir que los

recargos, intereses y multas constituyen cuatro penalidades por un mismo acto, y 9, al dictar sus sentencias en contra de los hechos y la ley. Según la opinión que del caso hemos formado, bastará sólo la consideración y resolución de los dos primeros para la decisión del recurso.

En su relación del caso y opinión la corte de distrito declaró probados los hechos relativos a la compra de los aeroplanos en los varios estados de la Unión, a su registro en el Negociado de Aviación del Departamento de Comercio en Washington y al cobro por el Tesorero y pago por los demandantes bajo protesta de las sumas reclamadas tales como fueron alegadas en las demandas, declarando probado además que los aeroplanos "son usados únicamente en el aire; vinieron volando desde los Estados Unidos, cuando fueron importados, a Puerto Rico; su círculo de actividades sobrepasa los límites geográficos de la Isla de Puerto Rico, pues son usados para hacer viajes a Saint Thomas (Islas Vírgenes) a la República Dominicana y a otros sitios en el extranjero, para negocios de la Sucesión Serrallés,.... Algunas veces han sido facilitados esos aviones, por amistad, a ciertas personas, pero no han cobrado por tales servicios de transporte."

Como sabemos en los dos primeros señalamientos de error se sostiene que la ley puertorriqueña no grava los aeroplanos con el arbitrio cobrado y que así debió resolverlo la corte de distrito tanto por el contexto del estatuto cuanto por el razonamiento del caso de *McBoyle* v. *United States,* 283 U. S. 25.

La ley aplicable es la sección 16, inciso 8 de la de Rentas de Puerto Rico tal como quedó enmendada por la 108 de 1936 (Leyes de 1936, (1) pág. 569.) Dice:

"8. *'Vehículos y aparatos de auto-impulsión' y lanchas y botes de motor.*—Sobre todo vehículo y aparato movido por propia impulsión, tales como automóviles, autovagones, camiones, locomotoras, tractores, autos de arrastre, motocicletas (sea cual fuere el nombre con que se conocieren), incluyendo *chassis,* motores, cuerpos de autos

sin motor, tanques, baterías, lanchas, tengan o no puestos los motores, motores para las mismas, incluyendo motores usados para la parte exterior, y sobre toda parte o accesorios para cualesquiera de los artículos aquí enumerados, excluyendo neumáticos, tubos interiores y gomas sólidas, que se vendan, traspasen, fabriquen, usen o introduzcan en Puerto Rico, un impuesto de diez (10) por ciento sobre el precio de venta en Puerto Rico siempre que dicho precio de venta en Puerto Rico no exceda de mil quinientos (1,500) dólares; *Disponiéndose,* que sobre la venta, traspaso, fabricación, uso o introducción en Puerto Rico de los vehículos o aparatos de propia impulsión y partes y accesorios de los mismos descritos en esta sección, con excepción de lanchas y botes, cuyo precio de venta en Puerto Rico sea mayor de mil quinientos (1,500) dólares y no exceda de dos mil (2,000) dólares, el impuesto será de doce y medio (12½) por ciento sobre el precio de venta y sobre la venta, traspaso, fabricación, uso o introducción en Puerto Rico de los vehículos o aparatos de propia impulsión, y partes y accesorios de los mismos, descritos en esta sección, con excepción de lanchas y botes, cuyo precio de venta en Puerto Rico exceda de dos mil (2,000) dólares, el impuesto será de quince (15) por ciento sobre el precio de venta; *Disponiéndose, además,* que las personas no residentes en Puerto Rico que usen automóviles de su propiedad para fines exclusivamente personales, estarán exentas del pago del impuesto prescrito por esta Ley por el período que usen licencia especial del Comisionado del Interior. Al expirar este período y adquirir la licencia ordinaria de dicho Comisionado, o antes, si el automóvil es destinado a otros usos, que los que aquí se consignan, pagarán los impuestos de rentas internas.''

La palabra *vehículo* procede de la latina *vehiculum* que viene de *vehare* que significa conducir, transportar. Se usa para designar un carruaje o cualquier otro artificio en que se puede transportar personas o cosas de un lugar a otro. Véase el tomo segundo, página 981, del Diccionario Enciclopédico de la Lengua Castellana de Zerolo.

Siendo ello así, precisa concluir que dentro del más amplio significado de la palabra, tuvo razón la corte sentenciadora al considerar que un aeroplano es un vehículo. ''Un avión ha sido definido como incluyendo cualquier clase de vehículo o estructura intentada para ser usada como medio para el

transporte de pasajeros o carga o ambos por el aire'', se dice en 2 C. J. 299, basándose en la siguiente cita: Conn. Pub. Acts (1911), p. 1348, c. 86, sec. 1 (quit 26 Bench & Bar 10).

Pero no puede negarse que la primera impresión que la palabra produce, la natural, la corriente, no lleva a la mente la idea del avión, si que la del carruaje que camina por tierra.

Como dijo la Corte Suprema de los Estados Unidos por medio del Juez Sr. Holmes en el caso que los apelantes invocan:

''La sección 2 define los vehículos de motor cuya transportación en comercio interestadual se castiga por la sección 3. La cuestión a resolverse es el significado de la palabra 'vehículo' en la frase 'cualquier vehículo de propulsión propia no diseñado para correr en railes.' Sin duda etimológicamente puede usarse la palabra para significar un aparato que se mueva por tierra, aire o agua, y algunas veces la legislación extiende su uso en tal dirección, e. g., tierra y aire, disponiéndose por separado para el agua en la Ley sobre Tarifas de septiembre 22, 1922, c. 365, sec. 401 (b), 42 Stat. 858, 948. Pero en su uso diario 'vehículo' trae a la mente el retrato de algo que se mueve por tierra.'' *McBoyle* v. *United States*, 283 U. S. 25, 26.

Y esa interpretación hacía cinco años que se había dado cuando la Legislatura de Puerto Rico enmendó por última vez la ley de que se trata en la forma que se aplicó a las importaciones de los demandantes.

Además, recientemente esta propia Corte Suprema de Puerto Rico, interpretando la misma ley aquí envuelta, en el caso de *Bull Insular Line, Inc.* v. *Sancho Bonet, Tes.*, 53 D.P.R. 865, 866, por medio de su Juez Asociado Sr. Wolf, se expresó así:

''No tenemos duda alguna de que vehículo es una palabra que generalmente se aplica a aquellos objetos que se mueven en tierra y no a algo que se mueve en el agua y que con ese sentido fué que se usó en la ley.''

Además aunque es verdad que las palabras específicas usadas por el legislador para concretar su pensamiento no

preceden si que siguen a las generales, es cierto que la lectura de la ley produce una impresión tan fuerte en el sentido de estar limitada a los vehículos terrestres, que sólo forzando la imaginación podrían comprenderse en ella los aeroplanos. La misma designación por separado de las lanchas y botes de motor—transporte marítimo—hace aún más claro el pensamiento legislativo.

Creemos que en verdad lo que la ley interpretada en sí misma demuestra es que el legislador no pensó al redactarla en los aviones, y si pensó, no quiso comprenderlos dentro de ella quizá estimando que tratándose de un nuevo medio de transporte siempre difícil y costoso en sus comienzos, no debía imponérsele gravamen alguno hasta que su adaptación se consolidara, contribuyendo de tal modo a su desarrollo que tan necesario ha llegado a ser para el progreso de los pueblos.

*Deben revocarse las sentencias apeladas y dictarse otras ordenando el reintegro de las sumas pagadas bajo protesta, con intereses y costas sin incluir en éstas los honorarios de abogado.*